**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

Chapter 11

JERRY CAMPBELL,

Case No. 8:16-bk-00223-KRM

Debtor.

_____/

**DEBTOR'S AMENDED RENEWED MOTION FOR**
**AUTHORITY  TO OBTAIN POST PETITION/EXIT FINANCING**

**(Hearing Scheduled for Thursday, September 22, 2016 at 1:30 p.m.,**
**Courtroom 9B, Sam M. Gibbons United States Courthouse,**
**801 North Florida Avenue, Tampa, Florida, 33602)**

Debtor, Jerry Campbell ("Debtor"), by and through his undersigned counsel, hereby

amends his prior Renewed Motion for Authority to Obtain Post Petition/Exit Financing (Docket

No. 231) and moves this Court for entry of an order authorizing the Debtor to obtain post

petition/exit financing as set forth below for the purpose of funding the Debtor's Chapter 11 plan

and such request is subject to obtaining a consensual confirmed plan of reorganization.  In

support of this amended motion, the Debtor states as follows:

**Jurisdiction**

1.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334.  The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper in this district pursuant to 28 U.S.C. § 1408.  The statutory predicate for the

relief sought herein is Section 364 of Title 11 of the United States Code (the "Bankruptcy Code")

and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.

**Background**

2.       On January 12, 2016, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3.       The details of the reason for the filing of the Chapter 11 bankruptcy is set forth in the Case Management Summary filed on January 21, 2016 (Docket No. 20).

4.       The Debtor continues to operate his personal affairs and remains the debtor-in-possession of this case.

5.       A Motion for Mediation was filed by the Debtor on April 21, 2016 (Docket No. 114).

6.       The Court entered an order requiring mediation titled Order Granting Debtor's Motion for Mediation on May 6, 2016 (Docket No. 131).

7.       The mediation was held over a three day period from June 1-3, 2016.

8.       A Binding Term Sheet attached as Exhibit "A" was entered into between the Debtor, the Krasula Group[1], Felicia Campbell and Jerry Campbell. Thereafter, Comerica Bank also agreed to the terms of the Binding Term Sheet.

9.       The parties are diligently working on a final settlement agreement, based on the Binding Term Sheet, which will be incorporated into a plan of reorganization.

10.       The plan of reorganization will first be funded by a $1.4 million dollar loan and the plan will thereafter be funded, in part, from other potential future sources of funds such as a portion of funds to which the Debtor may become entitled based on his employment agreement with his employer, as well as a portion of certain business interests that the Debtor has in casino related operations.  The loan will be repaid from the collateral described below, as well as the Debtor's income.

---

[1] As defined in the Binding Term Sheet

## **Summary of Terms of Loan**

| | |
|---|---|
| Lender: | HomeBancorp, Inc.; the holding company for HomeBankNA |
| Loan Amount: | $1,400,000 |
| Purpose: | Personal loan to fund the Chapter 11 plan |
| Term: | 5-year term, with principal payable in the manner set forth below, and interest payable monthly in arrears |
| Interest Rate: | Floating rate equal to 1.5% over Prime for the first 3 years, and equal to 2.5% over Prime for the fourth and fifth years. A floor of 5.0% will be in effect for the entire 5-year term. |
| Loan Fee: | $4,500 (25 basis points of the Loan Amount, plus $1,000), plus a loan documentation legal fees of $5,500, for a total of $10,000. |
| Collateral: | A first priority security interest in a portion of the assets (as described below) referenced in that certain Binding Term Sheet, dated as of June 3, 2016 (the "Binding Term Sheet"), among Post Note, LLC, John Krasula, the John A. Krasula Living Trust UAD April 1, 1988, as amended, the Borrower, Felicia Campbell and Comerica Bank, which includes the Borrower's interest in 60% of proceeds from HomeBancorp, Inc. (and any related entity) options referenced in Section 8 of the Binding Term Sheet (the "Options"), and the Borrower's interest in 50% of the assets held in the Distribution Trust and referenced in Section 10 (b) of the Binding Term Sheet. In addition, to the extent not captured above, the collateral will include, a first priority security interest in the proceeds of HomeBancorp, Inc. Restricted Stock (when this interest is taxed and thus deemed income), included in total annual compensation up to $750,000, and Borrower's 50% of the proceeds with respect to the annual compensation in excess over $750,000**,** Borrower's annual cash bonus pursuant to HomeBancorp, Inc.'s Compensation Plan/Bonus Schedule, included in total annual compensation up to $750,000, and Borrower's 50% of the proceeds with respect to the excess over $750,000, Borrower's Employee Life and Disability Insurance benefits, Supplemental Employee Retirement Plan benefits, and Employee Savings Plan 401(k)/ESOP benefits, in each case provided by HomeBanc N.A., and Borrower's future tax refunds (2016 tax year and forward) attributable to total annual compensation up to $750,000, and Borrower's 50% of the proceeds with respect to the excess over $750,000. **The collateral description specifically excludes the bankruptcy creditors' interest in all assets referenced in the Binding Term Sheet** |

Documentation:          Lender's counsel shall prepare the necessary loan documentation. The documentation will contain a negative pledge on JLLJ Development LLC and all other non-marketable securities which prohibits any liquidation, further funding or investment by Borrower without the written consent of Lender's Board of Directors.  All legal costs and expenses shall be the responsibility of Borrower and must be paid in full on or before closing.

Events of Default:      The final loan documents shall provide that the following shall be events of default hereunder by Borrower (a "Default" or an "Event of Default")

a.  Any representation or warranty made in the loan documents shall prove to be false or misleading in any material respect;

b.  Any report, certificate (including but not limited to any certification of the correctness of the Borrower), financial statement or other document furnished in connection with the loan documents or the loan made pursuant thereto, shall prove to be false or misleading in any material respect;

c.  Failure to make payment of any installment of principal or interest on the Note as and when due and payable (subject to applicable grace or cure period);

d.  Failure of Borrower to make any payment required under any of the other Loan Documents within ten (10) days after receipt of written notice thereof from Lender or failure of Borrower to perform any other covenant required to be performed by Borrower under any  of the other Loan Documents within thirty (30) days after receipt of written notice thereof from Lender; provided, however, that (i) if Borrower reasonably cannot perform or comply with any such obligation within such thirty (30) day period and if, in Lender's sole discretion, Lender's security will not be impaired, then Borrower may have such additional time (but not in excess of 60 days) to rectify such failure as Borrower reasonably may require, provided and for so long as Borrower proceeds with due diligence, and (ii) if, in Lender's reasonable judgment, Lender's security will be impaired if Borrower does not perform or comply with any such obligation in a period of less than thirty (30) days, Borrower will have only such period (if any) following demand in which to rectify such failure as Lender may reasonably specify; or

4

e.   The occurrence of a default by Borrower under any of the other Loan Documents which is not cured within any applicable grace or cure period.

Remedies of Default:    In the event of the occurrence of any Default, then Lender may at any time thereafter, at its option, declare the balance of the Note to be forthwith due and payable, both as to principal and interest, without presentment, demand, protest, or other notice of any kind, all of which are hereby expressly waived by Borrower, anything contained herein or in the Note to the contrary notwithstanding.

Other Conditions:    The proposed loan will include other customary terms and conditions, including but not limited to the following:

-   If the Borrower is in default on the terms of the Loan Document, the Lender has the right, in its discretion, to terminate the Borrower's employment.

-   No terms of this loan shall change any employment rights, agreements or benefits currently in place between Borrower and Lender other than as stated in the above paragraph.

-   The Borrower will provide an annual personal financial statement to the Lender, in a format or on a form, acceptable to the Lender.

-   The Borrower will provide signed copies of his annual federal income tax returns to the Lender, complete with all attached schedules, within 30 days of filing.

-   The Lender reserves the right to modify the terms of the loan, however the Lender acknowledges that any modification may require approval of the bankruptcy court.

Prepayment Penalty:    None

Mandatory Principal
Payments:

Minimum mandatory principal payments shall be made at least annually, on or before October 1, of each year commencing in 2017 (unless the Lender has been otherwise paid in full) in the amount of the greater of $25,000 or the amount of Borrower's net annual cash bonus[2] (to the extent that annual cash bonus plus all other compensation does not exceed $750,000) (hereinafter collectively referred to as "Yearly Principal Payments"). Borrower's compensation shall be calculated on a fiscal year beginning September 1, 2016 and ending August 31, 2017. The net annual cash bonus shall be held in the Distribution Trust until the annual compensation is calculated, which shall occur no later than September 15th.

The Lender requires that the Borrower's yearly living expenses, net of taxes, shall be no more than $75,000 per year. The Borrower shall pay the Lender any additional compensation funds available after payment of any alimony obligations, capped living expenses and interest due on the loan on a monthly basis which shall be applied to the principal balance due. Such payments due shall be made by Borrower to Lender on a monthly basis and shall include a reconciliation report demonstrating the calculation of the amount due. However, in any event the Lender's right to payment is subject to the $750,000 cap described above, plus Borrower's interest in 50% of the assets held in the Distribution Trust. All payments due to the Borrower from the Trustee of the Distribution Trust, and any payments with respect to the Options due to the Borrower, shall be paid to Lender as principal payments within 15 days of receipt of same. Any remaining principal balance at the end of the 5 year term shall be payable at that time.

See attached Exhibit with example of payments schedule.

11.     The loan is contingent on a confirmed plan of reorganization.

12.     The requirement to obtain a $1.4 million dollar loan to initially fund creditors in the anticipated plan of reorganization is an essential term of the settlement agreement reached at the mediation. The Debtor has negotiated the terms and conditions of the post petition/exit financing loan in good faith and the terms are fair and reasonable. Without this financing, a

---

[2] The net annual cash bonus is hereby defined as the cash bonus less only such taxes that are required to be withheld by law.

consensual plan of reorganization cannot be obtained.  The Debtor requests that this Court find that the loan extended by HomeBancorp, Inc., pursuant to the terms of the financing set forth herein, will have been extended in "good faith" (as the term is used in Section 364 of the Bankruptcy Code).

13.     HomeBancorp, Inc. requires court approval before it commences preparation of the Loan Documents.

14.     The Debtor shall file the loan documents with the court requesting final approval with five days negative notice. If no objections are filed, then the Debtor requests that the court enter an order approving the terms of the loan documents.

WHEREFORE, the Debtor respectfully requests this Court enter an order (a) granting the instant motion; (b) authorizing the Debtor to borrow the funds as set forth in the Loan Commitment attached and marked as Exhibit "B"; subject to subsequent court approval as stated in paragraph 14 above and (c) granting the first priority liens as set forth in the collateral section above.

Dated this 15th day of September, 2016

**IURILLO LAW GROUP, P.A.**

/s/ Camille J. Iurillo
CAMILLE J. IURILLO, ESQUIRE
Fla. Bar No. 902225
ciurillo@iurillolaw.com
5628 Central Avenue
St. Petersburg, FL 33707
(727) 895-8050 telephone
(727) 895-8057 facsimile
Attorneys for Debtor, Jerry D. Campbell

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 15th day of September, 2016, a true and correct copy of this **Amended Motion for Authority to Obtain Post Petition/Exit Financing** has been furnished **electronically** via the Court's CM/ECF to the **United States Trustee**, Timberlake Annex, 501 East Polk Street, Suite 1200, Tampa, FL 33602 and all parties receiving notice via CM/ECF; and **via U.S. Mail** to all parties on the attached mailing matrix not receiving an electronic copy via CM/ECF.

/s/ Camille J. Iurillo
Camille J. Iurillo
Fla. Bar No. 902225

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

JERRY D. CAMPBELL,

Debtor.

_____/

Case No. 8:16-bk-00223-KRM
Chapter 11
Hon. K. Rodney May

## BINDING TERM SHEET

This Binding Term Sheet is entered into between Post Note, LLC, ("Post Note"), John Krasula ("Krasula"), the John A Krasula Living Trust UAD April 1, 1988, as amended on November 23, 2005 ("Krasula Trust") (Post Note, Krasula and the Krasula Trust collectively referred to as the "Krasula Parties"), Jerry Campbell ("Jerry"), Felicia Campbell ("Felicia") and Comerica Bank ("Comerica") following mediation of the disputes between them relative to Case No. 8:16-bk-00223-KRM (the "**Proceeding**") filed in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "**Court**"). In full and complete settlement of all matters that were brought or that could have been brought in the Proceeding, the parties agree as follows:

1. On or before September 1, 2016, Jerry shall obtain a loan in the amount of $1,400,000 (the "Loan Proceeds"). The loan shall be collateralized by a priority lien on the assets set forth in Paragraph 10 and Jerry's 60% of the Options referenced in Paragraph 8. Krasula shall consent to subordinate 50% of his pledge in the Casino Related Entities. Krasula's pledge in the Casino Related Entities shall otherwise remain valid and unchanged.

{00638607.1}

EXHIBIT "A"

2.      On or before March 1, 2017 or earlier if permitted under the governing documents, Jerry shall withdraw all funds in his deferred compensations account at HomeBanc (the "Deferred Comp Funds").

3.      Jerry and Felecia shall forthwith file their 2015 tax returns and amendments to any prior returns they deem necessary after obtaining Court approval to retain a CPA.  Felicia shall receive one half of all refunds for years up to and including 2015.  Jerry shall receive the remaining half of all refunds for years up to and including 2015 (the "Debtor's Tax Refund") subject to paragraph 4 below.  The cost of the returns shall be paid $4,500 from the DIP account and $7,500 from the proceeds of an exempt retirement account.

4.      Forthwith upon receipt of the Loan Proceeds, the Deferred Comp Funds and the Debtor's Tax Refund, (each individually distributed upon receipt) Jerry shall distribute such funds as follows:

> a)    First, $300,000 to the Krasula Parties as a Substantial Contribution under  503(b)(3)(D) and 503(b)(4);
>
> b)    Second, to all other allowed Administrative Expense Claims, to the extent not otherwise paid out of, (i) retainers, (ii) the DIP account, (iii) funds held in the Iurllo Law Group Trust Account;
>
> c)    Third, to allowed unsecured claims.

5.      Both proofs of claims filed by the Krasula Group shall be allowed in full.  However, the total distribution to the Krasula Group shall not exceed $5.7 MM.

6.      Jerry shall not amend his schedules to list any additional creditors, change



the amount owed to any creditor or change the designation (c/u/d) as to any creditor.

7.      Jerry shall not consent to, and shall oppose, any motion to file a late proof of claim or amend a proof of claim filed by any creditor.

8.      The Krasula Group shall be entitled to 40% of all Options for HomeBancorp, Inc. and/or any other related entity stock held by Jerry now or at any time in the future.   At all times, the Krasula Group's Options shall have the same characteristics and rights in all respects as Jerry's remaining 60%, including but not limited to all extensions, renewals, replacements and exercise rights.

9.      At least the Krasula Group's Options shall be placed in a trust.  The Plan shall provide provisions for substantial assurance of equal treatment and payment of the Krausla Group Options.

10.     All of the following assets shall be placed in a trust for distribution between unsecured creditors, Jerry and Felicia (the "Distribution Trust"):

> a)      For a period of five years after execution of the settlement agreement, any annual compensation, regardless of form, including but not limited to salary, bonus, restricted stock, unrestricted stock, and any other form of benefit or compensation whatsoever, to the extent it exceeds $750,000.

> b)      All amounts received by Jerry upon or incident to the sale, merger or other similar transaction related to HomeBanc, including but not limited to a "Change in Control" payment, a sale bonus, and/or a signing bonus;

c)      Any amounts received by Jerry related to any of the Casino Related Entities listed on his Bankruptcy Schedules or any related or replacement entities later formed related to the same projects.

11.      The funds in the Distribution Trust shall be distributed from time to time when available at the discretion of the Trustee as set forth in the trust documents, with 50% going to allowed unsecured claims on a pro rata basis and the remaining 50% going to Jerry and Felicia.

12.      Upon the payment the funds set forth in paragraph 4 above, Jerry's bankruptcy estate shall dismiss all potential Chapter 5 cause of action against Felicia, her businesses and her children.  All creditors shall be barred from pursuing any claims in their own name.  This release shall not release the Krasula Group's 523 claim.

13.      Jerry consents to an extension for the filing of a non-dischargeable claim in favor of the Krasula Group for five years after the date of the settlement agreement. Such claim can be brought by the Krasula Group at any time after a breach of the settlement agreement.  Upon written notice of an alleged default(s) to Jerry and his bankruptcy counsel, Iurillo Law Group, P.A., setting forth the specific alleged default(s) and providing ten (10) days opportunity to cure or dispute the alleged default.

14.      Upon execution of the final settlement agreement, Jerry shall release the Krausla Group from all claims and causes of action whatsoever, whether direct or derivative or otherwise, except any obligations that the Krasula Group has und the Settlement Agreement.

15.      Upon execution of the final settlement agreement, the Krasula Group

releases Jerry from any and all causes of action, other than the proof of claims and the 523 claim and any obligations under the settlement agreement.

16.     Upon execution of this Binding Term Sheet, the parties shall agree not to disparage each other and as set forth in the Settlement Agreement.

17.     Felicia consents to the distribution to creditors set forth in this agreement. This agreement and Jerry and Felicia's approval is without prejudice to Jerry and Felicia in the dissolution of marriage action and does not impact and is not a waiver of any claims they may have under equitable distribution.

18.     The parties shall agree to cooperate to the extent necessary to implement the terms of this agreement and to the extent necessary to proceed with the Casino Related Entities.

19.     This Binding Term Sheet is being entered into for the specific purpose of reaching a resolution of the issues between the parties in the Proceeding and as otherwise set forth herein, without having to undertake the expense and time to adjudicate the respective claims and defenses of the parties.  Nothing herein constitutes an admission by any party.

20.     This Binding Term Sheet results from a Court-ordered mediation, and all communications between the parties related to this Binding Term Sheet shall be subject to the mediation confidentiality provisions.

21.     The Mediator shall file a report with the Court that this matter has been settled and that definitive settlement documents are being drafted.

22.     This Binding Term Sheet shall be binding upon the parties and their



successors and assigns.

23.    The Parties may execute this Binding Term Sheet in counterparts. Each executed counterpart will be considered an original, and all of them together will constitute the same agreement.

24.    Each of the parties shall, upon reasonable request, execute, procure, and/or deliver in favor of all of the other party any documents as are necessary to effectuate the intent of the parties in connection with all terms and conditions of this Binding Term Sheet. The parties agree that the Bankruptcy Court presiding over the Bankruptcy Case shall reserve jurisdiction to enforce the terms and conditions of the Binding Term Sheet.

25.    This Binding Term Sheet was drafted with the joint participation of the parties and shall be construed neither more strongly against nor in favor of any of them, but, rather, in accordance with the fair meaning hereof.

26.    The terms contained herein are binding. The parties shall work in good faith to complete a Settlement Agreement and other documents contemplated in this term sheet. In the event that the parties cannot agree on any document contemplated by this term sheet, each party shall submit its proposed document to the Elizabeth Green (the "Mediator"), who shall determine which document is in accordance with this term sheet, which shall be binding on the parties. The Mediator shall have the authority, in her discretion, to assist the parties in negotiations prior to making a determination. The Mediator shall be compensated at her normal hourly rate, which shall be paid by the party whose document she does not accept, unless otherwise agreed by the parties.

27.     Unless otherwise agreed by the parties, the final settlement agreement shall be completed by June 20, 2016.  If the settlement agreement is not complete by that date, each party shall on that date submit its proposed settlement agreement to the Mediator in accordance with paragraph 26.

28.     This agreement is subject to approval from Comerica.

Entered into this 3rd day of June, 2016.

_____
John Krasula, on behalf of himself, the
Krasula Trust and Post Note, LLC

_____
Counsel for Felicia Campbell

_____
Jerry Campbell

_____
Elizabeth Green

Mediator



www.homebanc.com

September 14, 2016

Mr. Jerry D. Campbell
101 W. Beach Place, #2109
Mailbox #139
Tampa, FL  33606

### COMMITMENT LETTER

Dear Mr. Campbell,

On behalf of HomeBancorp, Inc. ("Lender"), I am pleased to advise you that the Lender has agreed to offer you a loan, at Lender's sole discretion, which loan is subject to, but not limited to, the terms and conditions set forth herein.  Some of these terms and conditions may have already been met or are in the process of being accomplished.

Please confirm your acceptance of the terms and conditions set forth herein within five (5) business days or this commitment shall be deemed expired and no further commitment to lend shall exist. Additionally, this commitment shall, at the sole option and discretion of Lender, be void if the loan herein does not close within thirty (30) days of execution date of this letter.

**Borrower:**          Jerry D. Campbell, an individual.

**Loan Amount:**       Term loan of $1,400,000.

**Purpose:**           Personal loan.

**Term:**              5-year term, with principal payable in the manner set forth below, and interest payable annually in arrears.

**Interest Rate:**     Floating rate equal to 1.5% over Prime for the first 3 years, and equal to 2.5% over Prime for the fourth and fifth years.  A floor of 5.0% will be in effect for the entire 5-year term.

**Loan Fee:**          $4,500 (25 basis points of the Loan Amount, plus $1,000)

**Collateral:**    A first priority security interest in a portion of the assets (as described below) referenced in that certain Binding Term Sheet, dated as of June 3, 2016 (the "Binding Term Sheet"), among Post Note, LLC, John Krasula, the John A. Krasula Living Trust UAD April 1, 1988, as amended, the Borrower, Felicia Campbell and Comerica Bank, which includes the Borrower's interest in 60% of proceeds from HomeBancorp, Inc. (and any related entity) options referenced in Section 8 of the Binding Term Sheet (the "Options"), and the Borrower's interest in 50% of the assets held in the Distribution Trust and referenced in Section 10 (b) of the Binding Term Sheet.  In addition, to the extent not captured above, the collateral will include,, a first priority security interest in the proceeds of HomeBancorp, Inc. Restricted Stock (when this interest is taxed and thus deemed income), included in total annual compensation up to $750,000, and Borrower's 50% of the proceeds with respect to the annual compensation in excess over $750,000, Borrower's annual cash bonus pursuant to HomeBancorp, Inc.'s Compensation Plan/Bonus Schedule included in total annual compensation up to $750,000, and Borrower's 50% of the proceeds with respect to the excess over $750,000, Borrower's Employee Life and Disability Insurance benefits, Supplemental Employee Retirement Plan benefits, and Employee Savings Plan 401(k)/ESOP benefits, in each case provided by HomeBanc N.A., and Borrower's future tax refunds (2016 tax year and forward) attributable to total annual compensation up to $750,000, and Borrower's 50% of the proceeds with respect to the excess over $750,000.  **The collateral description specifically excludes the bankruptcy creditors' interest in all assets referenced in the Binding Term Sheet**

**Documentation:**    Lender's counsel shall prepare the necessary loan documentation.  The documentation will contain a negative pledge on JLLJ Development LLC and all other non-marketable securities which prohibits any liquidation, further funding or investment by Borrower without the written consent of Lender's Board of Directors.  All legal costs and expenses shall be the responsibility of Borrower and must be paid in full on or before closing.

**Events of Default:**    The final loan documents shall provide that the following shall be events of default hereunder by Borrower (a "Default" or an "Event of Default")

a. Any representation or warranty made in the loan documents shall prove to be false or misleading in any material respect;

b. Any report, certificate (including but not limited to any certification of the correctness of the Borrower), financial statement or other document furnished in connection with the loan documents or the loan made pursuant thereto, shall prove to be false or misleading in any material respect;

c. Failure to make payment of any installment of principal or interest on the Note as and when due and payable (subject to applicable grace or cure period);

d. Failure of Borrower to make any payment required under any of the other Loan Documents within ten (10) days after receipt of written notice thereof from Lender or failure of Borrower to perform any other covenant required to be performed by Borrower under any  of the other Loan Documents within thirty (30) days after receipt of written notice thereof from Lender; provided, however, that (i) if Borrower reasonably cannot perform or comply with any such obligation within such thirty (30) day period and if, in Lender's sole discretion, Lender's security will not be impaired, then Borrower may have such additional time (but not in excess of 60 days) to rectify such failure as Borrower reasonably may require, provided and for so long as Borrower proceeds with due diligence, and (ii) if, in Lender's reasonable judgment, Lender's security will be impaired if Borrower does not perform or comply with any such obligation in a period of less than thirty (30) days, Borrower will have only such period (if any) following demand in which to rectify such failure as Lender may reasonably specify; or

e. The occurrence of a default by Borrower under any of the other Loan Documents which is not cured within any applicable grace or cure period.

**Remedies of Default:**  In the event of the occurrence of any Default, then Lender may at any time thereafter, at its option, declare the balance of the Note to be forthwith due and payable, both as to principal and interest, without presentment, demand, protest, or other notice of any kind, all of which are hereby expressly waived by Borrower, anything contained herein or in the Note to the contrary notwithstanding.

**Other Conditions:**     The proposed loan will include other customary terms and conditions, including but not limited to the following:

- If the Borrower is in default on the terms of the Loan Document, the Lender has the right, in its discretion, to terminate the Borrower's employment.

- No terms of this loan shall change any employment rights, agreements or benefits currently in place between Borrower and Lender other than as stated in the above paragraph.

- The Borrower will provide an annual personal financial statement to the Lender, in a format or on a form, acceptable to the Lender.

- The Borrower will provide signed copies of his annual federal income tax returns to the Lender, complete with all attached schedules, within 30 days of filing.

- The Lender reserves the right to modify the terms of the loan, however the Lender acknowledges that any modification may require approval of the bankruptcy court.

**Prepayment Penalty:**     None.

**Mandatory Principal Payments:**     Minimum mandatory principal payments shall be made at least annually, on or before October 1, of each year commencing in 2017 (unless the Lender has been otherwise paid in full) in the amount of the greater of $25,000 or the amount of Borrower's net annual cash bonus[1] (to the extent that annual cash bonus plus all other compensation does not exceed $750,000) (hereinafter collectively referred to as "Yearly Principal Payments"). Borrower's compensation shall be calculated on a fiscal year beginning September 1, 2016 and ending August 31, 2017.  The net annual cash bonus shall be

---

[1] The net annual cash bonus is hereby defined as the cash bonus less only such taxes that are required to be withheld by law.

held in the Distribution Trust until the annual compensation is calculated, which shall occur no later than September 15th.

The Lender requires that the Borrower's yearly living expenses, net of taxes, shall be no more than $75,000 per year.  The Borrower shall pay the Lender any additional compensation funds available after payment of any alimony obligations, capped living expenses and interest due on the loan on a monthly basis which shall be applied to the principal balance due.  Such payments due shall be made by Borrower to Lender on a monthly basis and shall include reconciliation report demonstrating the calculation of the amount due.  However, in any event the Lender's right to payment is subject to the $750,000 cap described above, plus Borrower's interest in 50% of the assets held in the Distribution Trust.  All payments due to the Borrower from the Trustee of the Distribution Trust, and any payments with respect to the Options due to the Borrower, shall be paid to Lender as principal payments within 15 days of receipt of same.  Any remaining principal balance at the end of the 5 year term shall be payable at that time.

See the attached Exhibit with example of payments schedule.

## ADDITONAL LOAN APPROVAL CONDITIONS:

1. Borrower shall furnish to Lender evidence, satisfactory to Lender, that there are no other liens or encumbrances of any kind upon the collateral pledged by Borrower(s) to Lender to secure the loan.

2. Approval by Lender's Board of Directors.

3. Borrower shall furnish to Lender evidence, satisfactory to Lender, of Borrower's divorce settlement.

4. Borrower shall furnish to Lender evidence, satisfactory to Lender, of the status of Borrower's bankruptcy proceeding.

5. Borrower shall certify that no Event of Default or potential Event of Default has occurred or will occur on the closing date.

## TERMINATION OF COMMITMENT:

Lender reserves the right to cancel this Commitment and to terminate the Lender's obligation hereunder by written notice to Borrower if any one of the following events occurs, all without any further liability or obligation of Lender to Borrower:

1. The failure of the Borrower to comply within the time specified with any of the provisions and conditions applicable to the Commitment.

2. The non-payment within the prescribed time of any fees and expenses provided for in this Commitment.

3. The disapproval of title to the Collateral by Lender, or the disapproval by Lender of any the documentation delivered or executed hereunder.

4. The occurrence of any material adverse change following the date of this Commitment in the assets, net worth or credit standing of Borrower, or the entry or any judgment against the Borrower which would materially and adversely affect the credit standing of the Borrower or the ability of the Borrower to perform under this Commitment.

5. Any event, action or inaction that individually, or in connection with other events, would or could reasonably be expected to render untrue any warranty or representation made herein, cause any covenant made herein to be breached, or cause any condition precedent set forth herein to remain or become unfulfilled.

## **WARRANTY:**

Borrower warrants and represents that all representations, statements, matters, documents, information and instruments furnished or made by or on behalf of Borrower to Lender and upon which the issuance of this Commitment is based are complete and accurate, and that there have been no adverse changes in such representations, statements, matters, documents, instruments and information since the date said items were furnished to the Lender. It is expressly agreed that any breach of the foregoing representation by Borrower shall constitute grounds for the termination of this Commitment by Lender at Lender's option.

It is agreed that this Commitment shall be binding upon the heirs, successors, and assigns of the Borrower. The Lender shall not be deemed to have waived any of its rights upon or under this Commitment or any other document executed in connection herewith, or the collateral securing this loan, unless such waiver is in writing and signed by the Lender.  No delay or omission on the part of the Lender in exercising any rights shall operate as a waiver of such right or any other right.  A waiver on any one occasion shall not be construed to be a bar, or waiver of, any right on any future occasion.

This commitment shall not be assignable, including by operation of law or otherwise, without the prior written consent of the Lender. This commitment and all of its provisions not satisfied at the closing of the loan shall survive the closing.

By executing this Commitment, Borrower authorizes Lender, and/or its legal counsel, to file, including without limitation the right to pre-file, UCC-1 Financing Statements for the Borrower as "Debtor" in such jurisdictions as Lender shall determine, encumbering such collateral as is contemplated by this Commitment. If the loan is not consummated, then Lender will comply with applicable law regarding the filing of such UCC-3 Termination Statements as are necessary to terminate such Financing Statements as are pre-filed by Lender or its legal counsel pursuant to this authorization

If the terms and conditions are agreeable to you, we ask that you remit a non-refundable commitment fee of $3,500.00, the $1,000.00 processing fee and the expense deposit of $5,500.00, for a total of **$10,000.00,** together with this letter signed by the Borrower, within five (5) business days from the date of this Commitment. All expenses incurred will be applied to these fees. Please mail these items to the attention of:

HomeBancorp, Inc.
101 E. Kennedy Blvd., Suite 4100
Tampa, FL 33602
Attention: Dana Cluckey

Please feel free to contact me at 813-549-7160 to discuss any questions you may have.

Sincerely,

HOMEBANCORP, INC.

The undersigned hereby accept the above and forgoing Commitment and agree to all terms and conditions thereof.

Accepted this _____ 14th _____ day of September, 2016 by:

_____

(Please ensure your term sheet is signed by the Lender's representative prior to signing and returning.)

EXHIBIT

## Example of Payments Schedule
### (For illustration purposes only)

| | |
|---|---|
| All forms of compensation up to | $750,000 |
| | |
| Less: | |
| Taxes on income | 199,500 |
| Alimony | 180,000 |
| Living expenses, net of taxes | 75,000 |
| | |
| Sub-total | $454,500 |
| | |
| Net available for principal and interest | $295,500 |
| | |
| Plus: | |
| 50% of amounts over $750,000, after tax | TBD |
| | |
| Total Payments | TBD |



Label Matrix for local noticing
113A-8
Case 8:16-bk-00223-KRM
Middle District of Florida
Tampa
Thu Sep 15 08:56:18 EDT 2016

American Express Bank FSB
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

Bank of America, N.A.
Aldridge Pite, LLP
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305-1623

Erin K Barnett
Barnett Woolums, PA
110 Pinellas Way North
St Petersburg, FL 33710-8320

Felicia N Campbell
c/o Lara R. Fernandez
Trenam Law
PO Box 1102
Tampa, FL 33601-1102

Jerry D. Campbell
P.O. Box 172721
Tampa, FL 33672-0721

Citizens Bank NA f/k/a/ RBS Citizens NA
Brock Scott, PLLC
c/o Shaib Druker, Esq.
PO. Box 5018
Tampa, FL 33622-5018

Coastal Properties Group International
c/o Michael Frankum
423 Mandalay Avenue, Suite 102
Clearwater, FL 33767-2012

Deere & Company
c/o a Christopher Kasten II
Bush Ross, P.A.
1801 N. HIghland Avenue
Tampa, FL 33602-2656

Ditech Financial LLC
C/O Timothy D. Padgett PA
6267 Old Water Oak Road
Suite 203
Tallahassee, FL 32312-3858

Jeffrey J Groen
Groen Kluka and Company, PC
888 West Big Beaver Road
Suite 700
Troy, MI 48084-4745

Honigman Miller Schwartz and Cohn LLP
660 Woodward Avenue
Detroit, MI 48226-3583

Iurillo Law Group, PA
5628 Central Avenue
St. Petersburg, FL 33707-1718

Recovery Management Systems Corporation
25 S.E. Second Avenue
Suite 1120
Miami, FL 33131-1605

WELLS FARGO BANK, N.A.
c/o Alicia A Blanco Esq
Fifteen Piedmont Center
3575 Piedmont Road NE  Suite 500
Atlanta, GA 30305-1623

Ally Bank
P.O. Box 380901
Minneapolis, MN 55438-0901

Ally Financial
P.O. Box 380901
Minneapolis, MN 55438-0901

Ally Financial -
PO Box 130424
Roseville MN 55113-0004

American Express
P.O. Box 650488
Dallas, TX  75265

(p)BANK OF AMERICA
PO BOX 982238
EL PASO TX 79998-2238

Bayview Loan Servicing LLC
62516 Collection Center Dr.
Chicago, IL 60693-0625

Bayview Loan Servicing, LLC
4425 Ponce De Leon Blvd, 5th Floor
Coral Gables, FL 33146-1837

Bayview Loan Servicing, LLC, svc agent
c/o Jason Weber, Esq.
200 E. Broward Blvd. Suite 900
Fort Lauderdale, FL 33301-1815

Capital One/GM
Customer Center
P.O. Box 30256
Salt Lake City, UT 84130-0256

Chase Bank USA, NA
P.O. Box 15298
Wilmington, DE 19850-5298

Citizens Bank NA -
10561 Telegraph Rd
Glen Allen, VA 23059-4577

Citizens Bank NA
c/o SHAIB DRUKER, ESQUIRE
BROCK & SCOTT, PLLC
PO. Box 5018
Tampa, FL 33622-5018

Citizens Bank, N.A. -
1 Citizens Drive, ROP15B
Riverside, RI 02915-3019

Citizens One Mortgage
P.O. Box 6260
Glen Allen, VA 23058-6260

Comerica Bank
39200 Six Mile Road
Livonia, MI 48152-2689

Comerica Bank
P.O. Box 641618
Detroit, MI 48264-1618

Comerica Bank
c/o F. Brett Baccari, Esq. (Co-Counsel)
Simon PLC, Attorneys & Counselors
110 E. Broward Boulevard, Suite 1700
Fort Lauderdale, FL 33301-3500

Comerica Bank
c/o Gary M. Hansz, Esq.
Simon PLC, Attorneys & Counselors
37000 Woodward Avenue, Suite 250
Bloomfield Hills, MI 48304-0942

DANIEL J. WEINER (Michigan Bar No. P32010)
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304-5124

DITECH FINANCIAL LLC -
PO BOX 6154
RAPID CITY, SD 57709-6154

Dana M. Cluckey
1017 S. Dakota Ave.
Tampa, FL 33606-3005

Deere & Company -
PO Box 7100
Johnston, IA 50131-6600

Deere & Company
c/o A. Christopher Kasten, II, Esq.
Bush Ross P.A.
1801 N. Highland Avenue
Tampa, FL 33602-2656

Department of Labor and Security
Hartman Building Suite 307
2012 Capital Circle Southeast
Tallahassee FL 32399 0648

Department of Revenue
PO Box 6668
Tallahassee FL 32314-6668

Ditech Bankruptcy Dept.
P.O. Box 6154
Rapid City, SD 57709-6154

Ditech Financial LLC
c/o Albertelli Law
Post Office Box 23028
Tampa, FL 33623-2028

Ditech Financial LLC f/k/a Green Tree Servic
C/O Evan M. Singer, Esq
Timothy D. Padgett, P.A.
6267 Old Water Oak Rd Ste 203
Tallahassee, FL 32312-3858

E-Trade Bank -
c/o Bayview Loan Servicing, LLC
4425 Ponce De Leon Blvd, 5th Floor
Coral Gables, FL 33146-1837

Englander Fischer
721 First Ave. North
Saint Petersburg, FL 33701-3603

Felicia N. Campbell -
9000 Page Avenue
Jackson, MI 49201-9834

Felicia N. Campbell
c/o Lara R. Fernandez
PO Box 1102
Tampa, FL 33601-1102

Fifth Third Bank
700 Bridge St., NW
Grand Rapids, MI 49504-5534

Flagstar Bank
Mail Stop E115-3
5151 Corporate Drive
Troy, MI 48098-2639

(p)FLAGSTAR BANK FSB
5151 CORPORATE DRIVE
MAIL STOP E 115 3
TROY MI 48098-2639

Flagstar Bank FSB
c/o Leslie Fleming, Esq.
1475 Centrepark Blvd., Suite 130
West Palm Beach, FL 33401-7424

HomeBancorp Inc.
Homebanc, N.A.
c/o Mark J. Wolfson, Esq.
Foley & Lardner LLP
100 North Tampa St., Suite 2700
Tampa, FL 33602-5810

HomeBancorp Inc.
c/o Mark J Wolfson
100 N. Tampa Street, Suite 2700
Tampa, Florida 33602-5810

Homebanc N.A.
c/o Mark J Wolfson
100 N. Tampa Street, Suite 2700
Tampa, Florida 33602-5810

Honigman Miller Schwartz et
2290 First National Bldg.
660 Woodward Ave.
Detroit, MI 48226-3516

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

James W. Rose
Jaffe, Raitt, Heuer & Weiss
Suite 2500
27777 Franklin Road
Southfield, MI 48034-8214

John A. Krasula
28411 Northwestern Hwy.
Suite 850
Southfield, MI 48034-5522

John A. Krasula and John A. Krasula -
Living Trust
c/o Jeffrey Sattler, Esq.
40950 Woodward Ave., #100
Bloomfield Hills, MI 48304-5124

John Deere Financial
P.O. Box 6600
Johnston, IA 50131-6600

Kecskes Silver & Gadd PC
621 S. Main Street
Plymouth, MI 48170-1710

Macys/DSNB
P.O. Box 8218
Mason, OH 45040-8218

Pinellas County Tax Collector -
PO Box 4006
Seminole, FL 33775-4006

Post Note LLC
28411 Northwestern Hwy
Suite 850
Southfield, MI 48034-5522

Post Note LLC
c/o Harley E Riedel
110 East Madison Street
Suite 200
Tampa, FL 33602-4718

Post Note LLC -
c/o Jeffrey Sattler, Esq.
40950 Woodward Ave., #100
Bloomfield Hills, MI 48304-5124

Robert Cseplo
175 Parker Court
Chardon, OH 44024-1112

SYNCB/JC Penneys
P.O. Box 965036
Orlando, FL 32896-5036

Sibley Investors, LLC
P.O. Box 320500
Flint, MI 48532-0009

Synchrony Financial
c/o Recovery Management Systems Corp.
25 SE 2nd Ave, Suite 1120
Miami, FL 33131-1605

(p)US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

Wells Fargo Bank N.A.
P.O. Box 10335
Des Moines, IA 50306-0335

Wells Fargo Bank, N.A. -
Attention: Bankruptcy Department
MAC# D3347-014
3476 Stateview Blvd
Fort Mill SC 29715-7203

Wells Fargo Bank, N.A.
C/O Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305-1623

Wells Fargo Bank, N.A. -
Home Equity Group
1 Home Campus X2303-01A
Des Moines, IA 50328-0001

Wells Fargo Home Mortgage
P.O. Box 14411
Des Moines, IA 50306-3411

Winfield L. Cooper III
3487 S. Linden Road
Flint, MI 48507-3025

c/o Bayview Loan Servicing, LLC
4425 Ponce De Leon Blvd, 5th Floor
Coral Gables, FL 33146-1837

Harley E Riedel +
Stichter Riedel Blain & Postler, P.A.
110 East Madison Street
Suite 200
Tampa, FL 33602-4718

A. Christopher Kasten II +
Bush Ross, P.A.
Post Office Box 3913
Tampa, FL 33601-3913

Elena P Ketchum +
Stichter, Riedel, Blain & Postler, P.A.
110 E. Madison St., Suite 200
Tampa, FL 33602-4718

Mark J. Wolfson +
Foley & Lardner
100 North Tampa Street, Suite 2700
PO Box 3391
Tampa, FL 33601-3391

United States Trustee - TPA +
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602-3949

Geoffrey J Peters +
Weltman Weinberg & Reis Co LPA
3705 Marlane Drive
Grove City, OH 43123-8895

Barbara A Hart +
Stichter, Riedel, Blain & Postler, P.A.
110 E. Madison Street, Suite 200
Tampa, FL 33602-4718

Lara Roeske Fernandez +
Trenam, Kemker, et al
PO Box 1102
Tampa, FL 33601-1102

Camille J Iurillo +
Iurillo Law Group, P.A.
5628 Central Avenue
St. Petersburg, FL 33707-1718

Judy B Calton +
Honigman Miller Schwartz & Cohn LLP
2290 First National Bldg
660 Woodward Avenue
Detroit, MI 48226-3516

Brandi Rainey Lesesne +
Aldridge Pite LLP
3575 Piedmont Road, NE
Suite 500
Atlanta, GA 30305-1636

Jason A Weber +
Sirote and Permutt, P.C.
200 East Broward Blvd, Suite 900
Ft Lauderdale, FL 33301-1815

Nicole Peair +
Timberlake Annex
501 E Polk Street, Suite 1200
Tampa, FL 33602-3945

Pinellas County Tax Collector (AB) +
PO Box 4006
Seminole, FL 33775-4006

F Brett Baccari +
Simon PLC Attorneys & Counselors
37000 Woodward Avenue
Suite 250
Bloomfield, MI 48304-0942

Leslie Rushing +
Quintairos, Prieto, Wood & Boyer, P.A.
1475 Centerpark Blvd., Suite 130
West Palm Beach, FL 33401-7424

Evan S Singer +
Timothy D Padgett PA
6267 Old Water Oak Road
Suite 203
Tallahassee, FL 32312-3858

Jeffrey S Fraser +
Albertelli Law
Post Office Box 23028
Tampa, FL 33623-2028

Shaina Druker +
Brock and Scott, PLLC
Post Office Box 25018
Tampa, FL 33622-5018

Becket & Lee, LLP (LB) +
Post Office Box 3001
Malvern, PA 19355-0701

Gary A Hansz +
Simon PLC Attorneys & Counselors
37000 Woodward Ave., Suite 250
Bloomfield Hills, MI 48304-0942

Daniel J Weiner +
Schafer and Weiner, PLLC
40950 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304-5124

Jeffery J Sattler +
Schafer amd Weiner, PLLC
40950 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304-5124

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Bank of America
P.O. Box 982235
El Paso, TX 79998

Flagstar Bank, FSB -
5151 Corporate Drive
Troy, FL 48098

Internal Revenue Service
Centralized Insolvency Oper.
P.O. Box 21126
Philadelphia, PA 19114

U.S. Bank
P.O. Box 6352
Fargo, ND 58125

(d)U.S. Bank
P.O. Box 790408
Saint Louis, MO 63179

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Bayview Loan Servicing, LLC, as servicing

(u)Citizens Bank, N.A.

(u)Comerica Bank

(u)Ditech Financial LLC

(u)Flagstar Bank, FSB

(u)HomeBanc N.A

(u)K. Rodney May
Tampa

(u)Post Note LLC

(u)Renaissance Consulting & Development, LLC


(d)American Express Bank FSB
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

(d)American Express Bank FSB
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

(d)John Deere Financial
P.O. Box 6600
Johnston, IA 50131-6600


(d)Post Note LLC
28411 Northwestern Hwy
Suite 850
Southfield, MI 48034-5522

(d)Wells Fargo Bank, N.A.
P.O. Box 10335
Des Moines, IA 50306-0335

(d)Wells Fargo Home Mortgage
P.O. Box 14411
Des Moines, IA 50306-3411


(u)HomeBancorp, Inc. +

(u)Note: Entries with a '+' at the end of the
name have an email address on file in CMECF
------------------------------------------
Note: Entries with a '-' at the end of the
name have filed a claim in this case

End of Label Matrix
Mailable recipients    101
Bypassed recipients     17
Total                  118